**Kurt W. MEYER, Plaintiff,**

v.

**Mark TESLIK, Defendant.**

No. 05–C–269–C.

United States District Court, W.D. Wisconsin.

Jan. 26, 2006.

See, also, 2005 WL 2716517.

Kurt W. Meyer, Fox Lake, WI, Pro se.

Diane L. Milligan, Assistant Attorney General, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory and monetary relief, plaintiff Kurt Meyer, an inmate at the Fox Lake Correctional Institution in Fox Lake, Wisconsin, contends that defendant Mark Teslik deprived him of his right to freely exercise his religious beliefs between June 26, 2004 and October 1, 2004, in violation of the First Amendment and 42 U.S.C. § 2000cc–1, the Religious Land Use and Institutionalized Persons Act. Jurisdiction is present under 28 U.S.C. § 1331.

This case, now before the court on defendant's motion for summary judgment, boils down to a single question: Did defendant intentionally omit plaintiff's name from the list of inmates authorized to attend group religious services? The parties dispute the answer to this question; therefore, defendant's motion must be denied.

As a preliminary matter, I note that defendant has proposed facts regarding procedures in place prior to plaintiff's transfer to the institution and procedures initiated after the period of time at issue in this lawsuit. To the extent that these facts provide context for the dispute in this case, they have been included; otherwise, immaterial facts have not been considered. From the parties' proposed findings, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. Parties

At all times relevant to this lawsuit, plaintiff Kurt Meyer was incarcerated at the New Lisbon Correctional Institution in New Lisbon, Wisconsin. He is now incarcerated at the Fox Lake Correctional Institution in Fox Lake, Wisconsin. Plaintiff observes Native American spiritual practices.

Defendant Mark Teslik is employed by the Wisconsin Department of Corrections as chaplain of the New Lisbon Correctional Institution, a position he has held since April 4, 2004. Defendant Teslik's duties include administering programs to meet the spiritual and rehabilitative needs of offenders; assisting, coordinating and training community-based organizations and volunteers who provide programs directed at offenders; and performing administrative activities that support religious programming, such as coordinating pastoral visits and processing inmate requests for religious materials. In addition, defendant Teslik ministers to offenders by making "cell-front rounds" and providing inmates with an orientation to the institution and to volunteer services provided to inmates.

### B. Defendant's Arrival at the New Lisbon Correctional Institution

The New Lisbon Correctional Institution is a medium security prison. It was dedicated on April 2, 2004, and began receiving inmates on April 5, 2004.

When defendant assumed his duties at the institution on April 5, 2004, limited work had been done with respect to religious programming. Because defendant was a new employee of the Department of Corrections, it was necessary for him to

receive orientation regarding departmental and institutional rules and policies when he arrived in April 2004. During his first two weeks of employment, he needed to set up his office: he had no office furniture, computer or staff.

When defendant arrived at the prison, he began to organize the Umbrella Religious Group Services, which served Protestant, Catholic, Islamic, Native American, Jewish, Buddhist, Pagan and Wiccan inmates. During the first several months of his employment, defendant solicited the services of volunteer spiritual leaders from the community who were endorsed by and affiliated with particular religious groups. In addition, he worked to secure the services of paid spiritual leaders, who were responsible for conducting religious services for various denominations.

Defendant is an experienced pastor and chaplain, who has educated himself and has been educated about various religious traditions and practices, including Native American spirituality.

### C. *Requests for Religious Programming*

#### 1. *General procedures*

When inmates arrive at the New Lisbon Correctional Institution, they are required to complete a religious preference form. According to institution policy, a copy of each form is supposed to be given to defendant; a second copy is supposed to be placed in the inmate's social services file. Defendant's inmate clerk files these forms.

When defendant first arrived at the New Lisbon Correctional Institution, he received requests for religious services from inmates in several ways. Some inmates sent him interview/information request forms and others wrote to him directly.

Before an inmate could attend a group religious service, defendant had to add the inmate's name to a list of authorized attendees. When defendant first arrived at the New Lisbon Correctional Institution, he taped the weekly sign-up sheets on the walls in the prison housing units. Inmates would sign up for activities on these sign-up sheets each week and defendant would collect the sheets after the inmates had signed their names.

In June 2004, defendant was assigned an inmate clerk who began to compile and type the weekly rosters. At some point during the summer of 2004, as increasing numbers of inmates signed up to attend religious services, the clerk began checking rosters of attendance at religious services against the religious preference forms on file for each inmate. Because defendant had been told that inmates were not permitted to attend religious services unless they had completed a religious preference form, he provided blank forms to inmates who expressed a desire to attend services but who did not have a religious preference form on file.

Sometime in July 2004, defendant announced that he would no longer tape sign-up sheets on the wall. He announced that inmates who wished to attend religious services should write to him indicating the activities they wished to attend. Defendant then began using a typed roster listing the name, time, date and location of every religious service and the name, inmate number and housing location of each inmate authorized to attend each service. Each week the inmate clerk, working under defendant's supervision, would update the list of activities and inmates approved to attend them.

Weekly religious activity rosters continue to be the means by which defendant tracks religious programming and participation. If an inmate wishes to attend a religious activity, he may send a written request to defendant, asking for his name to be added to the list. Each week, defendant reviews the completed roster and distributes it to the movement observation

station sergeant, the sergeant of each housing unit, the control station and the supervisors.

### 2. *Native American religious programming*

The Wisconsin prison system permits the following Native American religious services: talking circles, pipe and drum ceremonies and sweat lodge ceremonies. Peace pipe ceremonies are incorporated into the sweat lodge. Drum ceremonies are generally run by the inmates. Pipe ceremonies have deeper religious significance and are usually led by a Native American spiritual advisor. Native American inmates may also practice their religion through personal meditation, fasting, correspondence with other believers and requests to abstain from work or programming.

The first Native American talking circle was held at the New Lisbon Correctional Facility on June 12, 2004. Talking circles were also conducted on July 16, 2004 and August 7, 2004. Beginning September 17, 2004, pipe and drum services were held weekly. The prison held its first sweat lodge on October 8, 2004. Plaintiff participated in that ceremony.

### 3. *Plaintiff's requests to attend religious programming*

Plaintiff arrived at the New Lisbon Correctional Institution on May 25, 2004. He completed a religious preference form on June 28, 2004. (Defendant does not remember seeing this form until September 29, 2004.) On at least two occasions during the summer of 2004, plaintiff sent defendant requests to attend religious services. On August 12, 2004, defendant responded to one of these requests, stating that he had added plaintiff to the list of inmates authorized to attend services. In fact, he had not done so.

On September 19, 2004, plaintiff submitted inmate complaint number NLCI–04–30562, alleging that defendant had violated his First Amendment right to practice his religion by denying him participation in Native American religious services. Plaintiff alleged that he had written to defendant twice, in addition to completing his religious preference form. After plaintiff filed his complaint, inmate complaint examiner Jill Sweeney contacted defendant to discuss plaintiff's allegations. She summarized her conversation with defendant as follows:

Chaplain Teslik was contacted regarding [plaintiff's] complaint. He stated that the inmate had submitted a religious preference form on 6/28/04, however had not been added to the list to attend services. When questioned regarding the inmate's allegations of several correspondence between the inmate and the chaplain (including interview requests from the chaplain indicating he had been added to the list for services) the chaplain was unsure of such correspondence and was unable to locate any documentation. He stated that he would add the inmate to the list for this week (October 1st services) and would notify the inmate of this. Based on the above, recommendation is made to affirm this complaint at this time.

On the evening of September 28, 2004, defendant made a special trip to plaintiff's unit. He spoke with plaintiff, told him that he was sorry plaintiff's name had not been placed on the Native American service list and promised to add plaintiff's name to the list immediately. On September 29, 2004, defendant received an information request from plaintiff. It said:

Dear Mr. Teslik: You came to speak to me today 9–28–04, about why I've been denied to go to Native American Services. Could you please send me a copy

of my [religious preference] form that I sent you in either late May or early June? I've enclosed a disbursement form, so you can supply me with a copy of that document.

Defendant replied as follows:

Mr. Meyer: There is no charge for a copy of [the religious preference form]. Here is the copy of your [ ] form [ ] dated 6–28–04 at NLCI. It is on file with NLCI Records and Chaplain's Office. You are now on the list of those Native American inmates who have requested to pipe Native American Religious Groups.

Because the authorization list for the October 1, 2004 Native American service did not contain plaintiff's name, defendant spoke personally with the Movement Observation Station sergeant and told him that plaintiff should be allowed to attend the Native American service being held on October 1. Plaintiff participated in the pipe and drum ceremony on October 1, 2004 and in a sweat lodge held on October 8, 2004.

## OPINION

Summary judgment is appropriate when no issues of material fact are disputed and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir.1998). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In response to defendant's proposed finding of fact, plaintiff proposed that defendant said to him in August 2004, "If you continue to threaten me with a lawsuit, it will be a long time before you ever attend any kind of group service for Native Americans. I will answer your request slip, but you will not attend Native American services." Plaintiff supported

this proposed fact with his own affidavit. Meyer Aff., dkt. # 30, at 4. Not surprisingly, defendant denies making this statement and asserts that plaintiff's name was not added to the authorized list because his requests to attend religious programming were misplaced. The question, then, is whether this dispute is material to the outcome of plaintiff's RLUIPA and First Amendment claims.

### A. *RLUIPA Claim*

Plaintiff contends that defendant violated the Religious Land Use and Institutionalized Persons Act by denying him authorization to attend Native American religious services during the months of July, August and September 2004. The protections afforded by the Religious Land Use and Institutionalized Persons Act apply where:

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

(2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc–1(b). Because the Wisconsin Department of Corrections receives and uses federal grant money for substance abuse treatment programs in its state prison facilities, the requirements of the Religious Land Use and Institutionalized Persons Act apply to it.

RLUIPA guarantees prisoners greater freedom to engage in religious conduct than does the First Amendment. The Act prohibits the government from imposing a "substantial burden on the religious exercise" of a prisoner, unless the defendant can show that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 2121, 161 L.Ed.2d

1020 (2005) (upholding act's constitutionality); 42 U.S.C. § 2000cc–1. "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 2122.

■ To show that his rights under the Act were violated, plaintiff must first establish that defendant's refusal to add him to the list of inmates authorized to attend religious services created a substantial burden on the exercise of his religious beliefs. 42 U.S.C. § 2000cc–2(b); *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). If plaintiff makes this showing, the burden under the statute shifts to defendant, who must demonstrate that his decision was the least restrictive means of furthering a compelling government interest. *See, e.g., Murphy v. Zoning Comm'n of Town of Milford,* 148 F.Supp.2d 173, 187 (D.Conn.2001).

■ Although the act does not define the term "substantial burden," the Court of Appeals for the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003). A "religious exercise" under the statute is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). Defendant contends that plaintiff's exercise of his faith was not substantially burdened for two reasons. First, defendant contends that the three religious services plaintiff missed were, at most, *de minimis* impositions that did not place a substantial burden on the practice of his religious beliefs. Second, defendant argues, plaintiff was not prevented from practicing his faith privately during the months of July, August and September 2004.

The fact that plaintiff missed "only" three group services does not preclude his claim under RLUIPA. RLUIPA protects "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc–5(7) (emphasis added). The parties do not dispute the sincerity of plaintiff's religious belief and desire to attend group worship services. In addition, they do not dispute that, despite plaintiff's repeated requests, defendant did not authorize plaintiff to participate in religious services during the months of July, August and September. It is difficult to imagine a burden more substantial than banning an individual from engaging in a specific religious practice. Depriving plaintiff of the opportunity to participate in the only group worship services offered during a three month period is no *de minimis* deprivation. Therefore, plaintiff has shown that his religious beliefs were substantially burdened within the meaning of RLUIPA.

Defendant contends that plaintiff's ability to practice his faith was not substantially burdened because he remained free to meditate silently, fast or correspond with other believers. However, plaintiff's ability to practice his faith by means other than group prayer is irrelevant to the question whether his ability to freely exercise his beliefs was substantially burdened. Unlike the First Amendment, RLUIPA protects more than the right to practice one's faith; it protects the right to engage in specific, meaningful acts of religious expression in the absence of a compelling reason to limit the expression. Under *Turner v. Safley,* 482 U.S. 78, 90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the availability of alternative forms of expression becomes relevant only after a substantial burden

has been established and prison officials have articulated a legitimate governmental interest in limiting or prohibiting otherwise protected conduct. In this case, defendant has not argued that there was a compelling reason for excluding plaintiff from group prayer services. The fact that plaintiff could arguably have engaged in silent prayer is not, by itself, justification for forbidding his participation in communal worship and in no way undermines his contention that his ability to attend group worship services was substantially burdened when he was denied the opportunity to attend those services.

■ It is undisputed that plaintiff expressed his desire to participate in talking circles and pipe and drum ceremonies from July through September 2004. Although these religious services were provided to other Native American inmates, plaintiff was not permitted to attend them. The reason for this denial was not a "compelling government interest," but defendant's failure to add plaintiff to the list of inmates authorized to attend religious services. If, as plaintiff contends, defendant deliberately blocked his access to religious services by refusing to add his name to the authorization list, plaintiff's rights under RLUIPA would have been violated. Therefore, disputed material facts preclude summary judgment with respect to this claim.

### B. *First Amendment Claim*

■ The protections offered by the First Amendment are more limited than those extended under RLUIPA. RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc–5(7), whereas traditional First Amendment jurisprudence protects only "the observation of [ ] central religious belief[s] or practice[s]." *Civil Liberties for Urban Believers*, 342 F.3d at 760. The parties have not addressed the question

whether pipe and drum ceremonies are "central" practices within Native American religious practice. However, it is undisputed that the ceremonies occur within the Wisconsin prison system on a weekly or near weekly basis. Drawing all inferences in plaintiff's favor, it is therefore reasonable to infer that pipe and drum ceremonies are central religious practices and are recognized as such by the prison. If the ceremonies are central to the practice of plaintiff's faith, then being denied the opportunity to participate in them placed a substantial burden on the exercise of plaintiff's faith within the meaning of the First Amendment.

Again, the parties dispute whether plaintiff was prohibited from participating in the group ceremonies intentionally or by inadvertent error. Because the resolution of that dispute is material to plaintiff's First Amendment claim, defendant's motion for summary judgment will be denied with respect to this claim as well.

### C. *Qualified Immunity*

■ The doctrine of qualified immunity "gives public officials the benefit of legal doubts" by insuring that "officers are on notice their conduct is unlawful" before they are subject to suit. *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Defendants will be denied qualified immunity only when the rights that have been violated are sufficiently particularized to have put potential defendants on notice that their conduct was unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the United States Supreme Court held:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Defendant contends that he is entitled to qualified immunity if plaintiff's rights under RLUIPA or the First Amendment were violated by his actions. However, it is well-established that prison officials violate a prisoner's free exercise rights when they needlessly and intentionally prevent him from performing religious acts of central significance to his faith. *Cutter*, 125 S.Ct. at 2121. Therefore, if plaintiff succeeds in showing that defendant intentionally denied him access to religious services, defendant will not be entitled to qualified immunity for his actions.

### D. *Damages*

■■ The parties dispute the availability of damages in this action. Plaintiff has requested declaratory, compensatory and punitive damages. Defendant contends that none of these forms of relief are available to him. Plaintiff acknowledges that he has been allowed to practice his religion since October 2004. Declaratory relief is inappropriate where a plaintiff alleges only past harm, unaccompanied by a "continuing adverse effect." *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Therefore, declaratory relief is unavailable. So, too, are compensatory damages. 42 U.S.C. § 1997e(e) states:

No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Despite the plain language of the statute, plaintiff contends that he should be permitted to recover compensatory damages for his emotional suffering in the absence of physical injury. Clearly, he is in error. If plaintiff's constitutional rights were violated, he may be entitled to nominal damages; however, he will not be entitled to compensation for his emotional distress. *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir.1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.").

■ That leaves the matter of punitive damages. Defendant contends that even if defendant had made the statements plaintiff attributes to him, his comments would not support an award of punitive damages. I disagree. Section 1997e(e) leaves unaffected claims for punitive damages. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir.2003). If defendant threatened to bar plaintiff from exercising his First Amendment rights because plaintiff indicated an intention to engage in a constitutionally-protected activity such as filing a lawsuit, then defendant evidenced exactly the kind of "evil" motive and intent punitive damages seek to deter. Should the jury find defendant liable, they may award punitive damages.

### ORDER

IT IS ORDERED that the motion for summary judgment of defendant Mark Teslik is DENIED.