**James J. KAUFMAN, Plaintiff,**

v.

**Gary R. McCAUGHTRY and Jamyi Witch, Defendants.**

No. 03–C–027–C.

United States District Court, W.D. Wisconsin.

March 23, 2006.

Jody J. Schmelzer, Assistant Attorney General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiff James Kaufman, an inmate in the custody of the Wisconsin Department of Corrections, contends that defendants Gary McCaughtry and Jamyi Witch violated his rights under the establishment clause of the First Amendment when they refused to grant his request to form an atheist study group at the Waupun Correctional Institution in Waupun, Wisconsin.

After finding that plaintiff's atheism was not a "religion" within the meaning of the First Amendment, I granted summary judgment in favor of defendants in an order dated February 9, 2004. On August 19, 2005, the Court of Appeals for the Seventh Circuit reversed this court's decision, holding that atheism *was* plaintiff's religion and that summary judgment was improper because defendants had advanced no secular reason for permitting inmates of other religions to form study groups while denying plaintiff the same permission. *Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir.2005).

Now before the court are defendants' second motion for summary judgment and plaintiff's motion for an extension of time to respond to defendant's motion. (Because plaintiff submitted his response in accordance with the court's original deadline, I will deny his motion for an extension of time as moot.) In light of the decision of the court of appeals, defendants concede that they violated plaintiff's rights under the establishment clause. However, they contend that they are entitled to qualified immunity because plaintiff's rights were not settled under clearly established law at the time their actions were taken. I agree with defendants that they were not on notice that their decision would violate plaintiff's First Amendment rights, and therefore will grant their motion for summary judgment.

From the facts found undisputed in the court's February 9, 2004 order and from the parties' proposed supplemental facts, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

Plaintiff James J. Kaufman resided at the Waupun Correctional Institution from February 12, 2002, until his transfer to the Jackson Correctional Institution on February 27, 2003. Defendant Gary McCaughtry is Warden of the Waupun Correctional Institution. Defendant Jamyi Witch is chaplain of the Waupun Correctional Institution.

### B. *Atheist Study Group*

Plaintiff defines an atheist as "someone who does not believe in the supernatural or in any gods, does not believe in rituals and prayer, basically believes in what you can see and test through science or through your own observations." He believes that atheism is a "communal type thing," with no hierarchy or power structure. Plaintiff believes that atheists have ethics derived from society, history and

personal experience that help believers determine what is right and wrong.

Department of Corrections guideline 309 IMP # 6 permits the formation of umbrella religious groups that are designed to appeal to a wide range of religious beliefs within a given religious group or faith. Religious groups must be led by a chaplain, approved spiritual leader or outside volunteer. They may not be led by inmates. To coordinate congregate services and study groups and accommodate inmates' religious needs, the institution requires inmates to designate their religious preference, using Department of Corrections guidelines and policies.

On March 12, 2002, plaintiff signed a religious preference form, designating his religious preference as Wiccan because defendant Witch had told him that he had to complete the form in order to attend the pagan study group. On several occasions, plaintiff spoke with defendant Witch about atheism. Plaintiff told defendant Witch that atheism is not a religion and that he wanted to form a group of inmates who chose not to worship a god.

On September 3, 2002, in accordance with Waupun Correctional Institution procedure, plaintiff completed and signed a form requesting a new religious group for atheists and submitted the form to defendant Witch. Plaintiff's request included an unannotated bibliography of atheist publications and a list of contact information for various atheist organizations. Plaintiff altered the "Request for New Religious Practice" form by crossing off all references to "religion." On the form, plaintiff stated:

> I request that a group be formed for atheists within the institution, for the purpose of study and education. Every atheist has the right to determine his own ideas; to express his beliefs in teaching and practice; to assemble for purposes of learning and instructions; to

educate others interested in atheism; and to promote a more thorough understanding of all religions, their origins, and their histories. The proposed group should meet once each week, for discussion and learning about the principles and practices which atheism is based upon. Even Atheism falls under this right [of free exercise]. Atheists are entitled to the same freedoms of movement, assembly, and speech, as those inmates who profess a religion.

When a prison official receives an inmate's written request to participate in a new religious practice, the prison warden, chaplain or any other staff person with religious training decides whether to approve the request, using the following criteria: 1) whether the request is motivated by religious beliefs; 2) whether other inmates with common ethical, moral or intellectual views share the interest in forming a new religious group; and 3) whether there is volunteer support to lead the group. All requests are reviewed by the Wisconsin Department of Corrections Religious Advisor or by the Religious Advisor Co–Chairperson in order to maintain consistency in the way new or unfamiliar requests are allowed or disallowed. Each request must be reviewed thoroughly because inmates allege that innumerable beliefs and practices are religious in nature.

The prison accommodates inmates who profess religious beliefs by permitting them to possess religious property and participate in study groups, congregate services and one religious feast each year. In order to obtain these accommodations, inmates have been known to call prohibited activities "religious." Therefore, prison officials must thoroughly research and investigate requests for new religious practices in order to validate the religious nature of the practice or group before permitting it.

Given the limited facilities and staff available in correctional institutions, it would be difficult and impractical to provide separate accommodations for every religious sect or to establish a new religious umbrella group for one inmate. Although defendant Witch recalls speaking about the moral and spiritual aspects of atheism with two inmates other than plaintiff, plaintiff was the only inmate at the Waupun Correctional Institution who expressed an interest to Witch in forming or participating in an atheist group.

On September 8, 2002, defendant Witch recommended to her supervisor that he deny plaintiff's request for a new religious practice at Waupun Correctional Institution because plaintiff did not "meet the requirements for a new religious practice." Defendant Witch stated that it would be appropriate to consider plaintiff's request under the "social group/organization" requirements of Wis. Admin. Code § DOC 309.365(4).

In accordance with defendant Witch's suggestion, on September 15, 2002, plaintiff submitted a request for a new inmate "activity group." Under Wis. Admin. Code § DOC 309.365(5), the warden, defendant McCaughtry, had the sole authority to approve the request. In the request, plaintiff sought a weekly meeting of persons interested in humanism, atheism and free speaking. The group's objectives would be

> to stimulate and promote Freedom of Thought and inquiry concerning religious beliefs, creeds, dogmas, tenets, rituals, and practices. To educate and provide information and literature on all religions, including their origins and history. To teach a progressive life stance, Free of Supernaturalism, to encourage critical thinking between fact and legend.

Defendant McCaughtry denied plaintiff's request on September 19, 2002, on the ground that the Waupun Correctional Institution was not forming new inmate activity groups at the time.

On November 14, 2002, plaintiff submitted an "Interview/Information Request" form, seeking a decision on his request to form an atheist group. Darrell Aldrich, unit manager for the chapel, told plaintiff that his request for a new religious group had been forwarded to defendant McCaughtry with a recommendation that the content of his request did not meet the criteria set out in Department of Corrections policy 309. On November 18, 2002, Aldrich recommended that defendant McCaughtry deny plaintiff's request for a new religious activity because it did not meet the criteria for an umbrella religion, congregate or study group and because there was no mention of other interested inmates or volunteer support, only a list of literature. On November 19, 2002, defendant McCaughtry denied plaintiff's request to form a new religious umbrella group on the ground that it did not meet the criteria outlined in Department of Corrections 309 IMP # 6 (religious beliefs and practices) and # 30 (procedure for volunteers).

In the light of the decision of the court of appeals in *Kaufman,* 419 F.3d at 682, the Wisconsin Department of Corrections is revising its policy regarding religious practices and property to reflect that atheism is a religion.

## OPINION

■ The doctrine of qualified immunity "gives public officials the benefit of legal doubts" by insuring that "officers are on notice their conduct is unlawful" before they are subject to suit. *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Defendants contend that they are entitled to qualified immunity on plaintiff's establishment clause claim because prior to April 2002, no court had

held that atheism was a religion for purposes of the First Amendment.

■ The establishment clause provides that Congress "shall make no law respecting an establishment of religion." U.S. Const. amend. I. The clause is violated when a governmental practice or policy "either has the purpose or effect of 'endorsing' religion." *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). Plaintiff contends that innumerable court decisions have held that "the First Amendment mandates governmental neutrality between religion and religion, and between religion and non-religion." *McCreary County, Kentucky v. American Civil Liberties Union,* —— U.S. ——, ——, 125 S.Ct. 2722, 2733, 162 L.Ed.2d 729 (2005); *see also Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Everson v. Board of Education of Ewing,* 330 U.S. 1, 15–16, 67 S.Ct. 504, 91 L.Ed. 711 (1947). Plaintiff contends that because religious favoritism is the evil the establishment clause seeks to avoid, defendants were on notice that they would violate plaintiff's First Amendment rights if they denied his request for a study group while permitting study groups for Wiccans, Christians and other religious groups.

■ Plaintiff has a point. Taken alone, the First Amendment's establishment clause is straightforward: it forbids prison officials from favoring religion over non-religion, *Wallace v. Jaffree,* 472 U.S. 38, 53, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985), but the establishment clause does not function in isolation, particularly in prison settings. Other laws, such as the First Amendment's free exercise clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1, limit the government's ability to burden prisoners' exercise of sincerely-held religious beliefs, even when governmental burdens are imposed neutrally upon believer and non-believer alike. *Cf. Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (upholding constitutionality of RLUIPA).

■ Although it is well-established that "the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all," it does not follow that non-religious beliefs must always be treated in the same fashion as religious ones. The Court of Appeals for the Seventh Circuit analyzed plaintiff's establishment clause claim under the three-part test laid out in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under *Lemon,* a governmental act does not violate the establishment clause if the act has a non-religious purpose; if its principal or primary effect is one that neither advances nor inhibits religion; and if it does not foster "an excessive governmental entanglement with religion." *Id.* at 612–13, 91 S.Ct. 2105; *Freedom from Religion Foundation v. Bugher,* 249 F.3d 606, 610 (7th Cir.2001).

It seems strange to say that accommodating religion can constitute a "secular" or non-religious purpose; nevertheless, courts have held that the government may "accommodate the free exercise of religion by relieving people from generally applicable rules that interfere with their religious callings" without violating the establishment clause. *Lee v. Weisman,* 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). As the Court of Appeals for the Fourth Circuit has explained:

[I]n commanding neutrality, the Establishment Clause does not require the government to be oblivious to the burdens that state action may impose upon religious practice and belief. Rather, there is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to

exist without sponsorship and without interference.

*Madison v. Riter,* 355 F.3d 310, 317 (4th Cir.2003) (quoting *Board of Education of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 705, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994)).

Consequently, courts have said that the establishment clause does not bar *all* governmental preference for religion over irreligion. *Van Orden v. Perry,* —— U.S. ——, —— n. 3, 125 S.Ct. 2854, 2860 n. 3, 162 L.Ed.2d 607 (2005). In fact, the very use of the term "non-religion" implies a distinction between "religious" beliefs grounded in affirmative convictions regarding matters of ultimate concern and "nonreligious" beliefs that do not touch on these ultimate questions. *E.g., County of Allegheny,* 492 U.S. at 610, 109 S.Ct. 3086 ("A secular state establishes neither atheism *nor* religion as its official creed.") (emphasis added).

In deciding defendants' appeal, the court acknowledged that defendants were not required to extend to non-religious activities the same protections afforded to religious practices:

> [T]he government may make special accommodations for religious practices that are not extended to nonreligious practices without violating the Establishment Clause. Indeed, RLUIPA requires prisons to do just that, and the Supreme Court has recently upheld its constitutionality.

*Kaufman,* 419 F.3d at 684 (internal citations omitted). The court of appeals concluded that defendants did not violate plaintiff's rights by offering preferential treatment to religious inmates; rather, they violated his rights by failing to recognize that plaintiff's proposed study group *was* religious:

> The district court went astray when it evaluated Kaufman's claim on the assumption that he wanted to form a non-religious group. Based on that premise, it held that the defendants were entitled to assess Kaufman's proposal under the more restrictive set of regulations that applies to normal social groups. Had the premise been correct, the conclusion would have followed; no one says that a person who wants to form a chess club at the prison is entitled under the Establishment Clause to have the application evaluated as if chess were a religion, no matter how devoted he is to the game.

*Id.* at 683–684. The court held that because prison officials permitted other religious groups to meet at the prison, but did not permit plaintiff's group to meet, they promoted "favored religions" over atheism. *Id.* at 683; *see also Metzl v. Leininger,* 57 F.3d 618, 621 (7th Cir.1995) ("[T]he First Amendment does not allow a state to make it easier for adherents of one faith to practice their religion than for adherents of another faith to practice their religion, unless there is a secular justification for the difference in treatment.").

■ In order to find that defendants had violated the establishment clause, the court first had to characterize atheism as a "religion." Once it did so, it followed naturally that defendant had violated the establishment clause by preferring some religions over others. Therefore, in determining whether defendants are entitled to qualified immunity, the key question is whether at the time defendants denied plaintiff's request to form a study group, it was clearly established that atheism is a religion.

■ Defendants will be denied qualified immunity only when the rights they have violated are sufficiently particularized to have put them on notice that their conduct was unlawful. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Hope v. Pelzer,* 536 U.S.

730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the United States Supreme Court held:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

The parties agree that no case decided before 2002 held that prison officials violated the establishment clause when they permitted recognized religious groups to hold study sessions but denied atheists the same opportunity: the "action in question" in this case had not "previously been held unlawful." *Id.* Consequently, defendants can be denied qualified immunity only if, "in the light of pre-existing law, the unlawfulness" of defendants' decision was "apparent." *Id.* If all prison officials except the "plainly incompetent" would have inferred that atheism was a religion and therefore entitled to the same consideration as other religions, qualified immunity will be denied. *See, e.g., Groh v. Ramirez,* 540 U.S. 551, 571, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (qualified immunity shields all but "the plainly incompetent or those who knowingly violate the law"). If not, it must be granted.

The United States Supreme Court has never determined whether atheism qualifies as a religion. The Courts of Appeals for the Seventh Circuit has answered the question in the affirmative, both in this case and in *Reed v. Great Lakes Cos.,* 330 F.3d 931, 934 (7th Cir.2003), but it had not addressed the question in 2002, when defendants made their decision. Courts have defined religion to encompass both traditional theism and beliefs regarding matters of "ultimate concern" that "occupy a place parallel to that filled by God in traditionally religious persons." *Welsh v. United States,* 398 U.S. 333, 340, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *Fleischfresser v. Directors of School Dist. 200,* 15 F.3d 680, 688 (7th Cir.1994). Under these standards, courts have recognized that pacifism, secular humanism and other nontheistic belief systems are entitled to the protection of the First Amendment's free exercise clause. *See, e.g., Torcaso v. Watkins,* 367 U.S. 488, 495, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) (Buddhism, Secular Humanism, Taoism, Ethical Culture and other nontheistic philosophical systems qualify as "religions" within meaning of the First Amendment); *Welsh,* 398 U.S. at 342–43, 90 S.Ct. 1792 (moral, ethical, or religious beliefs about what is right and wrong held with the strength of traditional religious convictions qualify as "religious" beliefs).

In this case, plaintiff identified himself to prison officials as an atheist, which he described as "someone who does not believe in the supernatural or in any gods, does not believe in rituals and prayer, basically believes in what you can see and test through science or through your own observations." He did not tell prison officials that he was a secular humanist, ethical culturist, pacifist or an adherent of any belief system. As plaintiff described his beliefs, they were not affirmatively concerned with matters of ultimate concern; rather, they were *negations* of the beliefs held by others.

In plaintiff's request for religious programming, he described his proposed group as one that would (1) meet for the "purpose of study and education;" (2) "educate others interested in atheism;" and (3) "promote a more thorough understanding of all religions, their origins, and their histories." He did not indicate how his

proposed group was connected to "religious" principles, however broadly defined, in which he had a sincere belief. Nothing in his proposal indicated how his group could be distinguished from a history club or debate society, or indicated that his group was dedicated to "moral, ethical, or religious beliefs about what is right and wrong" or to other "ultimate issues." *Welsh*, 398 U.S. at 342–43, 90 S.Ct. 1792. Moreover, prison officials explained that plaintiff's application was denied in part because it did not comply with prison regulations requiring prisoners to identify other interested inmates and community volunteers willing to facilitate the study group.

Plaintiff's second request proposed an "activity group" for prisoners "interested in humanism, atheism and free speaking." The group's objectives would be "to stimulate and promote Freedom of Thought and inquiry concerning religious beliefs, creeds, dogmas, tenets, rituals, and practices[;] educate and provide information and literature on all religions, including their origins and history[;] teach a progressive life stance, Free of Supernaturalism[; and] encourage critical thinking between fact and legend." Although these objectives more clearly involved matters of "ultimate concern," plaintiff failed to explain how the proposed topics of discussion were linked to his own sincerely held beliefs, as opposed to ideas in which he were merely "interested." Plaintiff had alleged that he was an atheist, not a humanist or a freethinker. Without some indication that plaintiff adhered to a religion whose beliefs would be advanced by the group he sought to form, prison officials did not act unreasonably by treating his request as one for a social activity.

Under the then-governing law, atheism's status as a religion in 2002 was unclear at best. No law in existence at the time of defendants' decision, in this circuit or any

other, stated explicitly that atheism was to be treated as a religion. Defendants treated both of plaintiff's requests for study groups as requests for secular activities and, as the court of appeals recognized, would have been entitled to deny his requests had they been "non-religious," as defendants assumed they were. Given these facts, defendants are entitled to qualified immunity. Therefore, their motion for summary judgment will be granted.

Because I have determined that plaintiffs are entitled to qualified immunity, I need not address damages; however, I note that the questions raised by the parties with respect to that issue are discussed at length in *Meyer v. Teslik*, 411 F.Supp.2d 983, 991 (W.D.Wis.2006).

## ORDER

IT IS ORDERED that

1. the motion for summary judgment filed by defendants Gary McCaughtry and Jamyi Witch is GRANTED;

2. Plaintiff James J. Kaufman's motion for an extension of time to respond to the defendants' motion for summary judgment is DENIED as moot;

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.