In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1914

JAMES J. KAUFMAN,

*Plaintiff-Appellant*,

*v.*

GARY R. MCCAUGHTRY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-027-C—**Barbara B. Crabb**, *Chief Judge.*

SUBMITTED OCTOBER 26, 2004[Œ]—DECIDED AUGUST 19, 2005

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Wisconsin inmate James Kaufman filed this suit under 42 U.S.C. § 1983, claiming as relevant here that prison officials violated his First Amendment rights. He raises three unrelated issues. Of the three, the one that has prompted the issuance of this opinion is his claim that the defendants infringed on his right to practice his religion when they refused to allow him to create an

---

[Œ] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

inmate group to study and discuss atheism. Kaufman also argues that the defendants used an overly broad definition of "pornography" when they prevented him from receiving several publications containing sexual content and photographs of nude men and that they improperly opened outside of his presence several letters that he claimed were "legal" mail. The district court dismissed the pornography claim at screening, see 28 U.S.C. § 1915A, and granted summary judgment in favor of the defendants on the other two. On appeal, Kaufman contests the merits of those decisions, argues that he should have been allowed to amend his complaint to add another claim, and claims that he should have been permitted to conduct additional discovery. We affirm in part and vacate and remand in part.

**I**

We begin with the main event: Kaufman's argument that the prison officials violated his constitutional rights when they refused to give him permission to start a study group for atheist inmates at the prison. The events underlying Kaufman's lawsuit occurred while he was an inmate at Wisconsin's Waupun Correctional Institution. Kaufman sued the then-warden of Waupun, Gary R. McCaughtry, in part in his individual capacity for damages, and so he remains a party despite the fact that Waupun now has a different warden and Kaufman is now at a different institution, the Jackson Correctional Institution. While at Waupun, Kaufman submitted an official form titled "Request for New Religious Practice," in which he asked to form an inmate group interested in humanism, atheism, and free speaking. The group would work "[t]o stimulate and promote Freedom of Thought and inquiry concerning religious beliefs, creeds, dogmas, tenets, rituals and practices[, and to] educate and provide information concerning religious beliefs, creeds, dogmas, tenets, rituals, and prac-

tices." See *Kaufman v. McCaughtry,* No. 03-C-027-C, 2004 WL 257133, *4 (W.D. Wis. Feb. 9, 2004). Kaufman also submitted a list of atheist groups and literature. The officials concluded that Kaufman's request was not motivated by "religious" beliefs. Accordingly, rather than evaluating the proposal under the state's relatively more flexible policy for new religious groups, see Wis. Admin. Code § DOC 309.61, they considered it under the procedure for forming a new inmate activity group, see Wis. Admin. Code § DOC 309.365. Applying the latter standard, they denied the request, stating that they were not forming new activity groups at that time.

Kaufman argues that the defendants' refusal to allow him to create the study group violated his rights under both the Free Exercise Clause and the Establishment Clause of the First Amendment. We note that Kaufman relies only on the First Amendment and at this stage of the litigation has not tried to take advantage of the added protections of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*

We address his claim under the Free Exercise Clause first. An inmate retains the right to exercise his religious beliefs in prison. *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002). The problem here was that the prison officials did not treat atheism as a "religion," perhaps in keeping with Kaufman's own insistence that it is the antithesis of religion. But whether atheism is a "religion" for First Amendment purposes is a somewhat different question than whether its adherents believe in a supreme being, or attend regular devotional services, or have a sacred Scripture. The Supreme Court has said that a religion, for purposes of the First Amendment, is distinct from a "way of life," even if that way of life is inspired by philosophical beliefs or other secular concerns. See *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972). A religion need not be based on a belief in the existence of a supreme being

(or beings, for polytheistic faiths), see *Torcaso v. Watkins*, 367 U.S. 488, 495 & n.11 (1961); *Malnak v. Yogi*, 592 F.2d 197, 200-15 (3d Cir. 1979) (Adams, J., concurring); *Theriault v. Silber*, 547 F.2d 1279, 1281 (5th Cir. 1977) (per curiam), nor must it be a mainstream faith, see *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981); *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003).

Without venturing too far into the realm of the philosophical, we have suggested in the past that when a person sincerely holds beliefs dealing with issues of "ultimate concern" that for her occupy a "place parallel to that filled by . . . God in traditionally religious persons," those beliefs represent her religion. *Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 688 n.5 (7th Cir. 1994) (internal citation and quotation omitted); see also *Welsh v. United States*, 398 U.S. 333, 340 (1970); *United States v. Seeger*, 380 U.S. 163, 184-88 (1965). We have already indicated that atheism may be considered, in this specialized sense, a religion. See *Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003) ("If we think of religion as taking a position on divinity, then atheism is indeed a form of religion."). Kaufman claims that his atheist beliefs play a central role in his life, and the defendants do not dispute that his beliefs are deeply and sincerely held.

The Supreme Court has recognized atheism as equivalent to a "religion" for purposes of the First Amendment on numerous occasions, most recently in *McCreary County, Ky. v. American Civil Liberties Union of Ky.,* 125 S.Ct. 2722 (2005). The Establishment Clause itself says only that "Congress shall make no law respecting an establishment of religion," but the Court understands the reference to religion to include what it often calls "nonreligion." In *McCreary County,* it described the touchstone of Establishment Clause analysis as "the principle that the First Amendment mandates government neutrality between religion and religion, and between religion and nonreligion."

*Id.* at *10 (internal quotations omitted). As the Court put it in *Wallace v. Jaffree,* 472 U.S. 38 (1985):

> At one time it was thought that this right [referring to the right to choose one's own creed] merely proscribed the preference of one Christian sect over another, but would not require equal respect for the conscience of the infidel, the atheist, or the adherent of a non-Christian faith such as Islam or Judaism. But when the underlying principle has been examined in the crucible of litigation, the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all.

*Id.* at 52-53. In keeping with this idea, the Court has adopted a broad definition of "religion" that includes non-theistic and atheistic beliefs, as well as theistic ones. Thus, in *Torcaso v. Watkins,* 367 U.S. 488, it said that a state cannot "pass laws or impose requirements which aid all religions as against non-believers, and neither can [it] aid those religions based on a belief in the existence of God as against those religions founded on different beliefs." *Id.* at 495. Indeed, *Torcaso* specifically included "Secular Humanism" as an example of a religion. *Id.* at 495 n.11.

It is also noteworthy that the administrative code governing Wisconsin prisons states that one factor the warden is prohibited from considering in deciding whether an inmate's request to form a new religious group should be granted is "the absence from the beliefs of a concept of a supreme being." See Wis. Admin. Code § DOC 309.61(d)(3), cited in *Kaufman v. McCaughtry,* 2004 WL 257133, at *9. Atheism is, among other things, a school of thought that takes a position on religion, the existence and importance of a supreme being, and a code of ethics. As such, we are satisfied that it qualifies as Kaufman's religion for purposes of the First Amendment claims he is

attempting to raise.

Kaufman argues that the defendants' refusal to permit him to meet with other atheist inmates to study and discuss their beliefs violates the Free Exercise Clause. "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); see also *Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999). In the context of the Free Exercise Clause, Kaufman must first establish that his right to practice atheism was burdened in a significant way. See *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699 (1989) (plaintiff must show a "substantial burden" on a "central religious belief or practice" to prevail under the Free Exercise Clause); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003) (collecting cases). He failed utterly to do so. Kaufman introduced no evidence showing that he would be unable to practice atheism effectively without the benefit of a weekly study group. The defendants apparently allow him to study atheist literature on his own, consult informally with other atheist inmates, and correspond with members of the atheist groups he identified, and Kaufman offered nothing to suggest that these alternatives are inadequate.

Moreover, an inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. *Tarpley*, 312 F.3d at 898; *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). The defendants submitted an affidavit stating that allowing any group of inmates to congregate for a meeting raises security concerns and requires staff members to supervise the group. Prison officials unquestionably have a legitimate interest in maintaining institutional security, see, *e.g.*, *Lindell v. Frank*, 377 F.3d 655, 658-59 (7th Cir. 2004), and we cannot

say that their denial of Kaufman's request for a study group was not rationally related to that interest. Accordingly, the district court properly granted summary judgment on Kaufman's claim insofar as it arises under the Free Exercise Clause.

The same is not true with respect to Kaufman's Establishment Clause claim. The Supreme Court reaffirmed the utility of the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602 (1971), in *McCreary*, 125 S.Ct. at 2732-35. Compare *Van Orden v. Perry,* 125 S.Ct. 2854, 2860-61 (2005) (plurality questions continuing utility of *Lemon* test). A government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion. *Lemon*, 403 U.S. at 612-13; *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir. 2000). The Establishment Clause also prohibits the government from favoring one religion over another without a legitimate secular reason. See *Linnemeir v. Bd. of Trustees of Purdue Univ.*, 260 F.3d 757, 759 (7th Cir. 2001); *Metzl v. Leininger*, 57 F.3d 618, 621 (7th Cir. 1995) ("[T]he First Amendment does not allow a state to make it easier for adherents of one faith to practice their religion than for adherents of another faith to practice *their* religion, unless there is a secular justification for the difference in treatment."); *Berger v. Rensselaer Cent. Sch. Corp.*, 982 F.2d 1160, 1168-69 (7th Cir. 1993) ("Under the Establishment Clause, the government may not aid one religion, aid all religions or favor one religion over another.").

The district court went astray when it evaluated Kaufman's claim on the assumption that he wanted to form a *nonreligious* group. Based on that premise, it held that the defendants were entitled to assess Kaufman's proposal under the more restrictive set of regulations that applies to normal social groups. Had the premise been correct, the conclusion would have followed: no one says that a person who wants to form a chess club at the prison is entitled

under the Establishment Clause to have the application evaluated as if chess were a religion, no matter how devoted he is to the game. In addition, the district court correctly noted that in certain circumstances the government may make special accommodations for religious practices that are not extended to nonreligious practices without violating the Establishment Clause. See *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 (1987); *Charles v. Verhagen*, 348 F.3d 601, 610 (7th Cir. 2003). Indeed, RLUIPA requires prisons to do just that, and the Supreme Court has recently upheld its constitutionality. *Cutter v. Wilkinson*, 125 S.Ct. 2113 (2005); see also *Charles*, 348 F.3d at 610-11.

The problem with the district court's analysis is that the court failed to recognize that Kaufman was trying to start a "religious" group, in the sense we discussed earlier. Atheism is Kaufman's religion, and the group that he wanted to start was religious in nature even though it expressly rejects a belief in a supreme being. As he explained in his application, the group wanted to study freedom of thought, religious beliefs, creeds, dogmas, tenets, rituals, and practices, all presumably from an atheistic perspective. It is undisputed that other religious groups are permitted to meet at Kaufman's prison, and the defendants have advanced no secular reason why the security concerns they cited as a reason to deny his request for an atheist group do not apply equally to gatherings of Christian, Muslim, Buddhist, or Wiccan inmates. The defendants argue that all they are doing is accommodating religious groups as a whole, as they are required to do under RLUIPA. *See Cutter,* 125 S.Ct. 2113; *Charles,* 348 F.3d at 610-11. But the defendants have not answered Kaufman's argument that by accommodating some religious views, but not his, they are promoting the favored ones. Because the defendants failed even to articulate—much less support with evidence—a secular

reason why a meeting of atheist inmates would pose a greater security risk than meetings of inmates of other faiths, their rejection of Kaufman's request cannot survive the first part of the *Lemon* test. See *Lemon*, 403 U.S. at 612-13; *Books*, 235 F.3d at 301. We therefore vacate the grant of summary judgment in the defendants' favor on Kaufman's claim under the Establishment Clause and remand for further proceedings.

Kaufman also argues that the district court should have allowed him to amend his complaint to add a claim that the defendants unconstitutionally have refused to permit him to wear a religious medal or emblem. He made this motion only after the defendants had filed their answer, and so he no longer could amend as a matter of right. FED. R. CIV. P. 15(a). We review a refusal to permit an amendment for an abuse of discretion. *Crestview Village Apartments v. United States Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 557 (7th Cir. 2004). We see no such problem here. Kaufman never alleged that his religious beliefs required him to wear any type of symbol, and never identified what emblem he wanted to wear. The district court did not abuse its discretion by refusing to allow the amendment.

**II**

We turn now to Kaufman's claim that the defendants withheld publications they wrongly deemed pornographic. Prison officials in Wisconsin may not deliver mail that falls into any of several prohibited categories, including pornography. Wis. Admin. Code § DOC 309.04(4)(c)(8)(a). Kaufman argues that the definition of "pornography" adopted by the Department of Corrections is overly broad and restricts him from receiving publications that he believes are permitted under the terms of a settlement agreement reached in an earlier class action in which he was a class member. See *Aiello v. Litscher*, 104 F. Supp. 2d 1068 (W.D. Wis. 2000) (discussing the class action). In fact, however, the definition Kaufman complains about was established in the settlement agreement. See Wis. Admin. Code § DOC 309.02(16). It identifies as pornography several classes of prohibited written and visual materials, among them depictions of "[s]adomasochistic abuse, including but not limited to flagellation, bondage, brutality to or mutilation or physical torture of a human being," *id.* § DOC 309.02(16)(a)(2). Kaufman concedes that his undelivered publications fall within this description, but he argues that he should have been allowed to receive them anyway because in his opinion they do not depict "sadomasochistic abuse" as that term is defined for purposes of a criminal statute punishing sexual abuse of a child, Wis. Stat. § 948.01(4). But Kaufman is bound by the settlement agreement, see *In re VMS Sec. Litigation*, 21 F.3d 139, 141 (7th Cir. 1994), and he does not allege that the intercepted publications were permitted under its definition. (Kaufman claims that he objected to the settlement agreement in *Aiello*, but he never opted out of the class, and so he remains bound by the outcome of the class action notwithstanding his objections.) Accordingly, the district court properly dismissed this claim.

## III

Next we turn to the claim that the defendants improperly opened Kaufman's mail outside of his presence. Kaufman alleges that, over a period of six months, eight pieces of allegedly legal mail were opened by DOC officials before being delivered to him. Six of these letters were sent to Kaufman, and two were letters that he had sent but that were returned. Of the letters Kaufman received, two of the envelopes were marked as being sent by the "U.S. Department of Justice, OEO." The remaining ones were marked as being sent by the American Civil Liberties Union, Steele Legal Services, the Eau Claire County Sheriff's Office, and "Langrock, Sperry, & Wool, LLP." One of the returned items was an envelope containing documents Kaufman wanted to file in an unrelated case in the district court; the envelope was returned for insufficient postage. Kaufman promptly affixed sufficient postage and resent the documents, which were accepted for filing. The other returned item was a letter Kaufman mailed to a Wisconsin assistant attorney general using the wrong zip code. It is undisputed that none of these eight letters was marked with a stamp identifying the sender as an attorney or stating that the mail was confidential. It is also undisputed that no attorney from any of these organizations ever represented Kaufman in any capacity.

Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the

inmate's rights if they open the letter outside of the inmate's presence. See *Wolff*, 418 U.S. at 577; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993).

The question here, however, is whether the items in question qualified as "legal" mail. Kaufman did not meet his burden at summary judgment to show that a trier of fact could so characterize any of the eight pieces of mail at issue. Kaufman never offered the correspondence itself—even under seal—or described the contents in any manner sufficient to allow the district court to conclude that the mail was privileged. Furthermore, he concedes that he was neither represented nor seeking to be represented by an attorney from any of the organizations with which he exchanged correspondence. To the extent Kaufman claims that the opening of his mail impeded his access to the courts, he offered no evidence that his ability to litigate any matter was affected by the defendants' actions. See *Walters v. Edgar*, 163 F.3d 430, 433-34 (7th Cir. 1998). The district court correctly granted summary judgment to the defendants on this claim.

Kaufman argues finally that the district court should have granted his motion to compel the defendants to provide unspecified new information in response to his discovery requests. But Kaufman never explained what additional information he believed was necessary, and he never submitted an affidavit to the district court asserting that he would be unable to oppose the defendants' motion for summary judgment without additional discovery, see FED. R. CIV. P. 56(f). Accordingly, we cannot say that the district court abused its discretion when it denied Kaufman's motion. See *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000).

**IV**

We VACATE the grant of summary judgment in favor of the defendants on Kaufman's Establishment Clause claim and REMAND this case to the district court for further proceedings. On remand, the district judge should address the question of which parties remain as proper defendants, and which should no longer be in the case because of Kaufman's transfer. We AFFIRM the district court's judgment in all other respects.

A true Copy:

      Teste:

                        _____
                        *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*