UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 19, 2006[*]
Decided July 24, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

No. 05-4473

| | |
|---|---|
| JOSEPH D. KOUTNIK, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | No. 04-C-911-C |
| LEBBEUS BROWN, et al., *Defendants-Appellees*. | Barbara B. Crabb, *Chief Judge*. |

**O R D E R**

Wisconsin inmate Joseph Koutnik brought this suit under 42 U.S.C. § 1983, claiming that several prison officials violated his First Amendment rights by preventing him from sending a letter containing illustrations to someone outside the prison. He first challenged a state policy preventing prisoners from possessing gang paraphernalia; next he challenged his restricted access to the mail. The district court dismissed Koutnik's first claim and granted summary judgment against him on his second claim. We affirm.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

The facts are undisputed. Defendant Lebbeus Brown is a supervisory officer and a "disruptive groups coordinator," trained to identify street gangs operating within the prison. While reviewing incoming and outgoing mail for gang-related content, Brown screened Koutnik's letter and refused to mail it because he believed that the illustrations contained in the letter were gang-related, in violation of Wisconsin Administrative Code §§ DOC 303.20(3), 309.04(4)(c)(10). As relevant here, that policy prohibits prisoners from possessing "any gang literature," *id.* § DOC 303.20(3), and states that the "department may not deliver incoming or outgoing mail if it . . . [t]eaches or advocates illegal activity, disruption, or behavior consistent with a gang or a violent ritualistic group," *id.* § DOC 309.04(4)(c)(10). Koutnik's drawing depicted a 24-hour clock with hands pointing to 19, 3, and 18—numbers that Brown interpreted to correspond with the letters "S," "C," and "R." Brown believed that these letters represented the initials of Koutnik's gang, the "Simon City Royals." In addition, small lettering that encircled the clock spelled out the phrase "Mister Kujo the Watchdog in the Shadow," which Brown believed was a reference to Koutnik's efforts to protect gang interests while incarcerated.

Brown issued Koutnik a "Notice of Non-Delivery of Mail" and demoted him one prisoner-class level. In response Koutnik filed an inmate complaint, but Ellen Ray, an inmate complaint examiner, agreed with Brown's determination that the letter and drawings related to Koutnik's former gang membership and recommended dismissal of the complaint. Peter Huibregtse, a deputy warden, affirmed Ray's recommendation. Koutnik appealed the dismissal, disputing that the letter was gang-related, but Richard Raemisch, Deputy Secretary for the Wisconsin Department of Corrections, agreed with Brown's assessment of the illustration and dismissed the appeal.

Koutnik then filed a complaint in the district court. As relevant here, Koutnik alleged that Brown, Ray, Huibregtse, and Raemisch violated his First Amendment rights to free speech and expression by refusing to allow him to send his illustration by mail. He also claimed that § DOC 303.20(3) is unconstitutionally vague and overbroad.

The district court screened Brown's complaint under 28 U.S.C. § 1915A and dismissed Ray, Huibregtse, and Raemisch because their decisions were judicial in nature and thus protected by absolute immunity. Subsequently the court dismissed Koutnik's constitutional challenge to § DOC 303.20(3) because the provision was reasonably related to a legitimate penological interest—"preventing the formation and spread of inmate gangs." Finally the court granted Brown's motion for summary judgment under the standard outlined in *Procunier v. Martinez*, 416 U.S. 396 (1974); the court concluded that § DOC 309.04(4)(c)(10) furthers important government interests including security and rehabilitation, and that Brown's use of

this provision to restrict Koutnik from mailing gang-related material was generally necessary to protect these governmental interests.

On appeal, Koutnik argues that the district court improperly dismissed his claim that § DOC 303.20(3) is unconstitutional on its face. That provision prohibits inmates from possessing gang parapharnelia:

> Any inmate who participates in any activity with an inmate gang . . . or possesses any gang literature, creed, symbols or symbolisms is guilty of an offense. An inmate's possession of gang literature, creed symbols or symbolism is an act which shows that the inmate violates the rule.

*Id.* § DOC 303.20(3). Koutnik contends that this section is vague and overbroad because the warden does not publish a list of sanctioned or unsanctioned groups, and that the rule vests virtually complete discretion in the hands of prison officials, thus denying him due process.

The United States Constitution permits greater restriction of prisoners' First Amendment rights than it allows elsewhere. *Beard v. Banks*, No. 04-1739, 2006 WL 1749604, at *6 (U.S. June 28, 2006). Prison regulations are reviewed deferentially and will be upheld if they are "'reasonably related to legitimate penological interests,' even when [they] 'impinge on inmates' constitutional rights.'" *Lewis v. Casey*, 518 U.S. 343, 387 n.9 (1996) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Gang suppression is a legitimate penological interest, *Wilkinson v. Austin*, 125 S. Ct. 2384, 2396-97 (2005); *Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005); therefore, § DOC 303.20(3) is valid so long as it is reasonably related to this goal. Koutnik suggests that for the regulation to be reasonable, the warden should be required to identify those groups that are sanctioned and those that are not. However we have upheld statutes designed to give police officers discretion to identify gangs operating outside the prison setting, *see Fuller ex rel. Fuller v. Decautur Public Sch. Bd.*, 251 F.3d 662, 668 (7th Cir. 2001), and we do not find it unreasonable that prison officials are afforded the same discretion, given the dangerous environment in which they operate.

Koutnik next challenges the district court's determination that his First Amendment rights were not violated when Brown refused to mail his illustration outside the prison, or when Ray, Huibregtse, and Raemisch declined to intervene. He contends that the prison's interests in security and order were not served by refusing to mail the illustrations because they were "never to be seen by another prisoner." Further, Koutnik disagrees that censoring his illustrations furthered the prison's interest in rehabilitation; he argues that Brown lacked expertise to opine

on the effect the drawing had on his rehabilitation, and in any event that Brown never articulated how censoring the letter advanced the prison's rehabilitative goals.

Prisoners have a First Amendment right both to receive and send mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). And the Supreme Court has recognized that the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials. *See Thornburgh v. Abbott*, 490 U.S. 401, 411, 413 (1989). Still prisons may regulate the transmission of outgoing mail so long as doing so "furthers one or more of the substantial governmental interests of security, order, and rehabilitation," and is "generally necessary" to protect these interests. *Procunier*, 416 U.S. at 413-14. *See Nasir v. Morgan*, 350 F.3d 366, 371, 374 (3d Cir. 2003); *Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir. 1995); *Martucci v. Johnson*, 944 F.2d 291, 295-96 (6th Cir. 1991).

The district court properly concluded that the prison's refusal to allow Koutnik to mail his drawings advanced an important penological interest—gang-suppression—and was generally necessary to protect that interest. *See Westefer*, 422 F.3d at 575. We "generally defer to the judgment of prison officials when they are evaluating what is necessary to preserve institutional order and discipline," *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005), and here Brown—who, as the district court noted, was specifically trained to monitor disruptive groups in the Wisconsin prisons—adequately substantiated his conclusion regarding the concerns posed by Koutnik's drawings.

Finally because Koutnik's constitutional argument lacks merit, we need not address his argument that Ray, Huibregtse, and Raemisch were not absolutely immune from liability. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616-17 (7th Cir. 2002). However we point out that the Supreme Court has limited the extension of absolute immunity in a similar context, affording only qualified immunity to prison discipline committee members. *Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985); *see also Walker v. Bates*, 23 F.3d 652, 656 (2d Cir. 1994). Similar to the procedures used by the prison discipline committee in *Cleavinger*, the prison's policies here for reviewing prisoner complaints lacked procedural safeguards common to the judicial process such as a hearing, the right to counsel, or discovery. For the reasons outlined in *Cleavinger*, Ray, Huibregtse, and Raemisch were entitled only to qualified immunity for their role in evaluating Koutnik's complaint. But the district court's error was harmless because Koutnik still failed to establish a constitutional violation. Moreover, Koutnik has earned a strike for purposes of 28 U.S.C. § 1915(g) for filing this frivolous appeal. *See Hains v. Washington*, 131 F.3d 1248, 1250 (7th Cir. 1997).

AFFIRMED.