UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 9, 2006
Decided September 7, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2149

| | |
|---|---|
| JAMES J. KAUFMAN,<br>            *Plaintiff-Appellant,*<br><br>            *v.*<br><br>GARY R. MCCAUGHTRY and JAMYI<br>J. WITCH,<br>            *Defendants-Appellees.* | Appeal from the United States<br>District Court for the<br>Western District of Wisconsin.<br><br>No. 03-C-027-C<br><br>**Barbara B. Crabb**, *Chief Judge.* |

**O R D E R**

James Kaufman is an inmate in Wisconsin's prison system. The present appeal relates to his claim under 42 U.S.C. § 1983 that various officials of Wisconsin's Waupun Correctional Institution, where he was incarcerated for a time, violated his First Amendment rights by refusing to allow him to organize a group of atheists. The district court initially dismissed the suit on the ground that atheism is not a "religion," and thus that the prison officials acted within their discretion when they treated his request as one subject to the rules for secular organizations. This court reversed, see

*Kaufman v. McCaughtry,* 419 F.3d 678 (7th Cir. 2005) (*Kaufman I*), finding that Kaufman's proposed group qualified as "religious" for Establishment Clause purposes, and thus that it was entitled to be treated the same as other religious groups in the prison. *Id.* at 684. On remand, the only two defendants remaining in the action were Gary R. McCaughtry and Jamyi Witch, respectively the Warden and Chaplain of Waupun. The defendants filed a second motion for summary judgment, this time claiming that they were entitled to qualified immunity, because the plaintiff's rights were not clearly established at the time they acted. The district court agreed with this position and entered judgment for the defendants. We affirm.

The history of Kaufman's request is set forth in our earlier opinion; we assume familiarity with it here. The only question we must resolve is whether the district court correctly concluded that defendants enjoyed qualified immunity under the circumstances of this case. The leading Supreme Court decision, as the district court recognized, is *Saucier v. Katz,* 533 U.S. 194 (2001). There the Court set forth a sequential test for claims of qualified immunity. First, the court must decide a threshold question, namely, whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the answer is no, then there is no need to explore immunity any further. If it is yes, the court must then decide "whether the right was clearly established." *Id.* The latter inquiry, the Court emphasized, "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

In Kaufman's case, our earlier opinion established the first of the two *Saucier* points: we held that his allegations were enough to assert the violation of a constitutional right. Thus, the only issue before us now is whether the rule was clearly established, such that the defendants should have known that they were violating it under the particular circumstances they faced. At a high enough level of generality, the rules have been clear for some time. As the Supreme Court put it in *McCreary County, Ky., v. American Civil Liberties Union of Ky.,* 545 U.S. 844, 125 S.Ct. 2722, 2733 (2005):

> The touchstone for our analysis is the principle that the "First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968); *Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 15-16 (1947); *Wallace v. Jaffree*, [472 U.S. 38,] 53 [1985].

But, as the district court rightly commented, the picture becomes murkier when we factor in more of the specifics. In certain circumstances, as the Supreme Court recognized in *Cutter v. Wilkinson,* 544 U.S. 709 (2005), the government is entitled to make special accommodations for religious practices that are not extended to nonreligious practices. The parties agree that no case prior to 2002 alerted the prison

officials to the fact that they might need to draw the line between atheism, as "a school of thought that takes a position on religion, the existence and importance of a supreme being, and a code of ethics," see *Kaufman I*, 419 F.3d at 682, and an entirely secular school of thought. Nor did earlier law throw much light on how that line should be drawn.

The defendants point out that even some judges have been uncertain about the way atheism should be treated. See, *e.g., Kilaab Al Ghashiyah v. Dept. of Corr. of State of Wisconsin,* 2003 WL 1089526 (E.D. Wis. 2003), disapproved by *Charles v. Verhagen,* 348 F.3d 601 (7th Cir. 2003). Kaufman himself, from time to time, claimed that he did not regard atheism as a religion. He went so far as to cross out all references to the term "religion" on the form he tendered to the officials. At no point has Kaufman directed our attention to case law prior to the time the defendants acted that clearly held that prison officials had to treat atheist groups just the same as Muslim groups, or Christian groups, or Wiccan groups, for purposes of the formation of study groups in the prison. Recalling the purpose of qualified immunity, which is to shield government officials performing discretionary functions from damage liability when their conduct does not violate clearly established rights, see *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), we conclude that the officials here have shown that they are entitled to qualified immunity.

The judgment of the district court is **AFFIRMED**.