NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted September 20, 2007[*]
Decided September 24, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-1422

| | |
|---|---|
| WILLIE C. SIMPSON, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the |
| | Eastern District of Wisconsin |
| *v.* | |
| | No. 06-C-200 |
| MANUEL JOSEPH, et al., | |
| *Defendants-Appellees.* | J.P. Stadtmueller, |
| | *Judge.* |

**O R D E R**

Wisconsin inmate Willie Simpson claims to have a right to privacy that was violated when a nurse and physician at the Racine Correctional Institution discussed sensitive medical information with him in the presence of guards.  The district court granted summary judgment to the defendants, reasoning that legitimate security concerns outweighed any privacy interest and justified a prison policy requiring guards to be present.  We agree and affirm the judgment.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus the appeal is submitted on the briefs and the record.  Fed. R. App. P. 34(a)(2).

The facts are not in dispute. Simpson, who has since been transferred to a different prison, is a violent and disruptive inmate who spent almost his entire stay at Racine in punitive segregation in the Waukesha Segregation Unit. Written security policies at Racine require that segregation inmates be placed in restraints and accompanied by at least one guard any time they are out of their cells. *See* Waukesha Segregation Unit Handbook, Movement Procedure (Jan. 2004); Racine Corr. Inst. Sec. Procedure No. 2015 (Feb. 15, 2006). At Simpson's medical appointments, therefore, a guard was present in the room and could overhear conversations between Simpson and the medical staff. Twice in August 2005 a staff member mentioned in front of the attending guard that Simpson is HIV-positive. The first time, when Simpson was with a nurse, he asked the guard to leave the room and watch through a window in the door, which the guard did. The next time, when Simpson was with a physician, a different guard refused to leave because of the Racine security policies. A guard would face discipline for disclosing medical information overheard while escorting an inmate, and in this case neither guard shared the information with anyone.

Simpson sued the nurse and physician, the security director at Racine, and several administrators who were not involved in the underlying events; indeed, all of the defendants except the two medical workers learned that Simpson is HIV-positive only when they processed his prison grievances or were served with his lawsuit. The parties stipulated that Simpson's right-to-privacy claim "concerns only dissemination and disclosure of medical information related to his HIV-positive condition," and at summary judgment the district court concluded that a segregation inmate has a constitutional right to privacy that is broad enough to encompass concealing his HIV-positive status from guards. The court also assumed that, if a member of the prison medical staff discusses a segregation inmate's HIV-positive status in front of a prison guard accompanying the inmate, a "disclosure" has occurred. Even if we accept both premises, however, we agree with the district court that the defendants were entitled to summary judgment.

Prison administrators may restrict the constitutional rights of inmates through regulations that are "'reasonably related to legitimate penological interests.'" *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006) (quoting *Turner v. Safley*, 482 U.S. 78, 87 (1987) (internal quotation marks omitted)). Three factors are relevant in evaluating regulations like the security policies at Racine: (1) whether the regulation is rationally related to a legitimate government objective, (2) the impact that accommodating the asserted right will have on the guards or prison staff or resources, and (3) whether readily available alternatives suggest that the regulation may be unreasonable. *Washington v. Harper*, 494 U.S. 210, 224-25 (1990) (analyzing prisoners' constitutional right to reject medical treatment); *Russell v. Richards*, 384 F.3d 444, 447-48 (7th Cir. 2004) (same).

The defendants submitted unchallenged affidavits detailing the prison administrators' interests in prison security and protecting medical staff from potentially dangerous segregation inmates like Simpson. Simpson concedes, as he must, that those are legitimate penological goals, *see Overton v. Bazzetta,* 539 U.S. 126, 133 (2003) (describing "internal security" as "perhaps the most legitimate of penological goals"); *Harper*, 494 U.S. at 225 (noting prison administrators' "interest in ensuring the safety of prison staffs and administrative personnel"), but he contends that the policies requiring a guard to accompany segregation inmates outside their cells are not rationally connected to that interest because the prison has not asserted that the guards themselves needed to know his HIV-positive status for their own safety. Simpson, though, misses the point. Requiring a guard to accompany segregation inmates directly addresses the interests the prison has asserted—institutional security and protecting the medical personnel from segregation inmates. *See Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (upholding prison denial of request for prisoner study group as rationally related to prison interest in maintaining institutional security); *Russell*, 384 F.3d at 448 (holding that prison policy requiring inmates to delouse upon entering prison was logically related to asserted prison goal of protecting inmates and personnel from exposure to lice).

As for the second factor, accommodating Simpson's asserted constitutional right to conceal his HIV-positive status would require that the attending guard wait outside the examination room during an inmate's medical appointments. The defendants submitted competent evidence, through the affidavit of Racine's security director, that a guard escort could both deter segregation inmates from attacking medical personnel and immediately react to any such attack, while a guard standing outside the door would be hard-pressed to do either. Simpson disagreed, but he provided no evidence (on top of his disagreement) to put the issue in dispute.

Finally, Simpson proposes an alternative to the prison's policies—posting a guard outside the examination room door to observe the appointment through a window in the door—but, given the defendants' unrefuted evidence that posting a guard outside the examination door would put the safety of the medical personnel at risk, his proposed alternative imposes an impermissible burden on the legitimate penological interests of security and safety. *See Russell*, 384 F.3d at 449 (noting that accommodating prisoner's asserted right must not impose a greater than *de minimis* cost on legitimate penological interest). We are "particularly deferential" to prison administrators' judgment that a change in policy would impair the prison's ability to protect those within its bounds, *see Overton*, 539 U.S. at 135, and under these facts we cannot say that the Racine policies are not rationally related to the legitimate goal of protecting the prison's medical staff.

AFFIRMED.