NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted March 19, 2008[*]
Decided March 20, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 07-2712

| | |
|---|---|
| JAMES J. KAUFMAN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 06-C-205-C |
| THOMAS E. KARLEN, et al., | |
| *Defendants-Appellees*. | Barbara B. Crabb, |
| | *Chief Judge*. |

**O R D E R**

James Kaufman, an inmate formerly housed at Wisconsin's Jackson Correctional Institution (JCI), contends that various prison officials violated his constitutional rights in multiple ways; he also raises claims under the Religious Land Use and Institutionalized

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(A)(2).

Persons Act (RLUIPA). The district court granted summary judgment to the defendants, and we affirm.

We set out the allegations relevant to this appeal, viewing the facts in the light most favorable to Mr. Kaufman. *See Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007). Mr. Kaufman is an atheist, and he asked JCI to deliver a silver circle that he had ordered, which he said was a symbol of his atheism. Inmates are permitted to own one religious emblem, but, according to prison regulations, it must be "generally recognized by the inmates [sic] religion as having religious significance." Mr. Kaufman attached a design for the symbol to his written request form, and below the design its creators stressed that the symbol had "nothing to do with any religion or philosophy." Mr. Kaufman had scratched out that sentence on the document, but prison officials independently found an unaltered version of it. Because the symbol was not related to his religion, prison officials denied his request, but later allowed Mr. Kaufman to own a different atheist symbol that he proved was generally recognized by atheists.

At Mr. Kaufman's request, the American Atheist Association donated a box of atheist publications to JCI's library. To Mr. Kaufman's chagrin, the prison librarian did not place these books on the shelves for roughly two years. But, Mr. Kaufman asserts, she was able to expeditiously process other religious items, like Bibles. According to the prison, donations must be searched for inappropriate material before they can be placed in the library. Also, the prison librarian underwent eye surgery around the time that the items were donated, so she was unable to work for several months and processed materials at a slower pace when she returned.

Bookstores and publishers often provide inmates with magazines or books at no charge. Mr. Kaufman requested some "free literature," but JCI has a policy of disallowing free items because, it asserts, prison staff would have to spend a substantial amount of time screening them. The prison, though, has several exceptions to this rule, including an exception for religious literature. Mr. Kaufman also requested other, non-gratuitous books, including a "Loompanics" catalog and "Jokes for the John," but after finding that these materials contained sexual (Mr. Kaufman is a sex offender) and racist content, the prison rejected his requests.

JCI receives a large volume of mail each day, and prison officials are required to separate legal mail from regular mail. According to the prison, to qualify as legal mail, the mail must be clearly identified as being from one of several specific persons or organizations, such as his attorney or a member of Congress. Once properly identified, legal mail must, according to prison policies, be opened in the inmate's presence, while regular mail can be screened without the inmate present. According to Mr. Kaufman,

prison officials opened ten pieces of legal mail outside of his presence. JCI, on the other hand, contends that it did not recognize some of the letters as legal mail because the envelopes did not identify an attorney's name or an acknowledged legal organization. The prison does admit to having opened other pieces of Mr. Kaufman's legal mail, but asserts that it did so in error.

The prison has a policy of loaning inmates up to $200 a year so that they can appeal their cases. Mr. Kaufman sought to send mail to an attorney at the ACLU, but was denied the loan because, at the time, JCI deemed correspondence to the ACLU irrelevant to his ongoing litigation. Though the prison had denied his request, Mr. Kaufman somehow managed to obtain a legal loan anyway. When prison officials found out, they determined that he had violated prison regulations (disobeying orders and misuse of state/federal property) and confined him to his cell for 15 days. Mr. Kaufman similarly tried to obtain a loan in order to mail a letter to the Wisconsin Supreme Court. The loan was denied, but Mr. Kaufman tried to trick JCI into sending it anyway, and when officials discovered the subterfuge, they punished him. While in confinement Mr. Kaufman was refused access to the law library. He believed that all of these actions were retaliatory.

Inmates are generally given three bars of soap per month. If an inmate desired more, he had to purchase it from the prison. Mr. Kaufman requested more soap, but, because his money was being used to cover his legal costs, he could not afford to buy it. The prison refused to give him additional bars of soap for free.

In his complaint, Mr. Kaufman argued that (1) the denial of his atheist symbol violated the Establishment Clause and his rights under RLUIPA; (2) the library's delay in processing the atheistic books and the prison's denial of free publications and other books that he ordered violated his right to freedom of speech, as well as the Establishment Clause and the Equal Protection Clause; (3) prison staff members violated his First Amendment rights by opening legal mail outside of his presence; (4) prison officials retaliated against him for filing lawsuits; and (5) the prison showed deliberate indifference to his health by refusing to provide him with extra bars of soap. The parties filed cross motions for summary judgment, and after finding that Mr. Kaufman had not presented enough evidence to allow a rational jury to find in his favor on any of the claims, the district court granted the defendants' motion.

On appeal Mr. Kaufman reasserts these claims. We review the district court's grant of summary judgment de novo. *See Hammer v. Ashcroft*, 512 F.3d 961, 967 (7th Cir. 2008).

Mr. Kaufman first contends that prison officials violated the Establishment Clause and his rights under RLUIPA by refusing to hand over his atheistic symbol when, he

argues, they give religious symbols to other inmates. Inmates retain a right to freely exercise their religion, although that right is subject to the state's legitimate penological objectives. *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). And we already have determined that Mr. Kaufman's atheism qualifies as a religion. *See Kaufman v. McCaughtry*, 419 F.3d 678, 682 (7th Cir. 2005). But here the undisputed facts show that JCI refused to give Mr. Kaufman the silver circle because it determined that the request related to personal, rather than religious reasons. Mr. Kaufman later requested a different symbol that was related to his religion, and JCI gave it to him. Because the contested symbol admittedly had "nothing to do with any religion or philosophy," it cannot serve as the basis for a claim under RLUIPA. *Cf. Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006) (noting that actions that do not substantially burden religious exercise cannot support claim under RLUIPA). Additionally, to the extent that Mr. Kaufman challenges the policy that religious symbols must be generally accepted by the religion as violating the Establishment Clause, we agree with the district court that the policy has a valid secular purpose—ensuring that symbols do not identify prisoners with gangs or other non-religious separatist groups—without excessively entangling with any religion or advancing religion. *See Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 991-92 (7th Cir. 2006).

Mr. Kaufman next challenges the prison's handling of the atheist books that were donated, as well the prison's denial of other materials that he requested. Prisoners have a First Amendment right to receive information through the mail. *Jackson v. Frank*, 509 F.3d 389, 391 (7th Cir. 2007). Restrictions on this right are permissible if they are "'reasonably related to legitimate penological objectives.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Mr. Kaufman alleges that the librarian took longer to process atheist books than she did other religious sources, but the undisputed facts show that her recent eye surgery made her process *all* books slowly and that she eventually placed several of the atheist texts in the library. Mr. Kaufman also argues that he should have been allowed to receive free publications and various "joke" books through the mail. But JCI asserted, without contradiction, that it did not have the resources to screen all of the free publications, and we previously have upheld similar justifications. *See Jackson*, 509 F.3d at 391-92. Additionally, we have reviewed some of the other material that Mr. Kaufman sought and agree with the defendants that they had a legitimate interest in keeping what might be considered inflammatory literature out of the prison. *See Kaufman*, 419 F.3d at 685.

Mr. Kaufman next contends that JCI violated his First Amendment rights by opening his legal mail without his being present. We have noted that an inmate's legal mail should be afforded greater protections because of the potential interference with his right of access to the courts. *See id.* at 685-86. *But cf. Martin v. Brewer*, 830 F.3d 76, 78 (7th Cir. 1987) (noting that security concerns in prisons warrant some restriction on communications between inmates and "free persons," including attorneys). In this case, Mr. Kaufman and the prison

officials dispute whether the mail was opened intentionally, but Mr. Kaufman has presented no proof of improper motive on the prison's part. And, perhaps more importantly, he has not argued that the opening of his legal mail interfered with his right to counsel, or his right of access to the courts. *See Kaufman*, 419 F.3d at 686; *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). Therefore, we conclude that the district court properly granted summary judgment on this claim.

Mr. Kaufman also argues that the prison retaliated against him by placing him on cell confinement and restricting his access to the law library during that confinement. To succeed on this claim, Mr. Kaufman had to establish that prison officials took these actions because he engaged in protected activities. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Here the facts show that JCI punished Mr. Kaufman because he twice tried to circumvent its policy regarding legal loans, not because he engaged in protected activities. *See Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *accord Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). Accordingly, the district court properly granted summary judgment on this claim.

Finally, Mr. Kaufman claims that prison officials violated his Eighth Amendment rights by not providing him with additional bars of soap. To prevail on this claim, Mr. Kaufman had to show that JCI deprived him of "humane conditions of confinement." *See Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006); *cf. Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (concluding that deprivation of sheets, toilet paper, shoes, towels, soap, toothpaste, and other personal property for six days may violate Eighth Amendment). This claim is frivolous. Mr. Kaufman does not dispute that JCI gave him three bars of soap per month, and we cannot conclude that the prison's refusal to supply him with more (at no charge) amounts to a constitutional violation.

AFFIRMED.