In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3751

CENTER FOR INQUIRY, INC., and REBA BOYD WOODEN,

*Plaintiffs-Appellants*,

*v.*

MARION CIRCUIT COURT CLERK and MARION COUNTY PROSECUTOR,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00623-SEB-DML — **Sarah Evans Barker**, *Judge*.

ARGUED APRIL 19, 2013 — DECIDED JULY 14, 2014

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Indiana Code §31-11-6-1 specifies who may solemnize a marriage—that is, perform the final steps that unite persons who hold marriage licenses. The list includes religious officials designated by religious groups but omits equivalent officials of secular groups such as humanist societies. Although three states (Florida,

Maine, and South Carolina) authorize humanists to solemnize marriages by becoming notaries public, Indiana does not (notaries cannot perform marriages in Indiana)—nor does it provide any other way for private secular groups to exercise this authority. Four states (Alaska, Massachusetts, Vermont, and Virginia) allow anyone to solemnize a marriage, and another six (Colorado, Kansas, Montana, Pennsylvania, New York, and Wisconsin) allow the couple to solemnize their own marriage, but neither option is available in Indiana. Here is the statute:

> Marriages may be solemnized by any of the following:
>
> **(1)** A member of the clergy of a religious organization (even if the cleric does not perform religious functions for an individual congregation), such as a minister of the gospel, a priest, a bishop, an archbishop, or a rabbi.
>
> **(2)** A judge.
>
> **(3)** A mayor, within the mayor's county.
>
> **(4)** A clerk or a clerk-treasurer of a city or town, within a county in which the city or town is located.
>
> **(5)** A clerk of the circuit court.
>
> **(6)** The Friends Church, in accordance with the rules of the Friends Church.
>
> **(7)** The German Baptists, in accordance with the rules of their society.
>
> **(8)** The Bahai faith, in accordance with the rules of the Bahai faith.
>
> **(9)** The Church of Jesus Christ of Latter Day Saints, in accordance with the rules of the Church of Jesus Christ of Latter Day Saints.
>
> **(10)** An imam of a masjid (mosque), in accordance with the rules of the religion of Islam.

Ind. Code §31-11-6-1. Anyone not on this list who purports to solemnize a marriage commits a crime. Ind. Code §31-11-11-6. The state accommodates some religions, such as the Quakers (the Society of Friends, which the statute calls the "Friends Church"), that do not have clergy, but does not accommodate others, such as Buddhists, that lack clergy-led structures.

This suit under 42 U.S.C. §1983 contends that Indiana's marriage-solemnization statute violates the Constitution's First Amendment (applied to the states through the Fourteenth) by giving some religions a privileged role. Plaintiff Center for Inquiry is a nonprofit corporation that describes itself as a humanist group that promotes ethical living without belief in a deity. The Center seeks to show, among other things, that it is possible to have strong ethical values based on critical reason and scientific inquiry rather than theism and faith. The Center maintains that its methods and values play the same role in its members' lives as religious methods and values play in the lives of adherents.

Reba Boyd Wooden is the Center's leader in Indiana and is among 23 persons across the nation certified by the Center as "secular celebrants". She has been asked by members to solemnize their marriages, which she wants to do but can't because Indiana does not recognize humanist leaders as "clergy"—nor is the Center willing to classify itself as a "religious organization" in order to allow Wooden to be treated as "clergy".[†] Two members who wanted Wooden to solem-

---

[†] Wooden formerly held a designation from the Humanist Society, a group distinct from the Center, as a "humanist celebrant" and solemnized weddings in that capacity. The Humanist Society has informed Indiana that it is a religious organization, and the state treated Wooden

nize their marriage—so that the occasion could be marked by expressions and ceremonies appropriate to their beliefs—were among the plaintiffs, but in October 2012, with the suit still pending in the district court, their marriage was solemnized without Wooden's aid. Only the Center and Wooden remain as plaintiffs.

The district court denied plaintiffs' request for an injunction and entered judgment for the defendants, who enforce Ind. Code §31-11-6-1 in Marion County (Indianapolis). 2012 U.S. Dist. LEXIS 170243 (S.D. Ind. Nov. 30, 2012). The district court characterized subsections (1) and (6) through (10) as accommodations of religion and observed that any accommodation differentiates the treatment of religious adherents from some non-religious groups. It also observed that anyone who obtains "clergy" credentials from an enterprise such as the Universal Life Church can solemnize a wedding. Indiana states that a humanist group could *call* itself a religion, which would be good enough for the state. Finally, it noted that a humanist celebrant could conduct an extra-legal ceremony, which the not-yet-married couple could follow up with a trip to the local court to have the clerk perform a legally effective solemnization.

Plaintiffs find these options unacceptable; they are unwilling to pretend to be something they are not, or pretend to believe something they do not; they are shut out as long

_____

as "clergy" in her role as that Society's celebrant. The Center, by contrast, refuses to accept the religious organization label or allow its members "clergy" status. When Wooden became an employee of the Center in 2007, she relinquished her designation as a celebrant for the Humanist Society. Her claim against the state therefore presents a justiciable controversy.

as they are sincere in following an ethical system that does not worship any god, adopt any theology, or accept a religious label. Adherents to Buddhism, Jainism, Shinto, and some forms of Taiosm call themselves "religious" despite the absence of gods in their faiths; Indiana may treat some of these religions as having "clergy" (we discuss limitations later). But humanists groups that reject the label "religion" are excluded from Indiana's list of permissible celebrants.

It is hard to avoid the district court's point that accommodations, by definition, treat the accommodated religion differently from one or more secular groups. See *Presiding Bishop v. Amos*, 483 U.S. 327, 334 (1987); *Salazar v. Buono*, 559 U.S. 700, 719 (2010) (plurality opinion). But this cannot be a complete answer to plaintiffs' contention that humanists are situated similarly to religions in everything except belief in a deity (and especially close to those religious that lack deities). An accommodation cannot treat religions favorably when secular groups are identical with respect to the attribute selected for that accommodation.

Neutrality is essential to the validity of an accommodation. See *Kiryas Joel Village School District v. Grumet*, 512 U.S. 687, 703 (1994); *Cutter v. Wilkinson*, 544 U.S. 709, 723–24 (2005). A state could not, for example, permit Catholic priests to solemnize weddings while forbidding Baptist ministers to do so. See, e.g., *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005); *Larson v. Valente*, 456 U.S. 228, 244 (1982) (state can't choose favorites among denominations). See generally Michael W. McConnell, *Accommodation of Religion*, 1985 Sup. Ct. Rev. 1; Michael W. McConnell, *Accommodation of Religion: An Update and a Response to the Critics*, 60 Geo. Wash. L. Rev. 685 (1992); Kent Greenawalt, *Establishment*

*Clause Limits on Free Exercise Accommodations*, 110 W. Va. L. Rev. 343 (2007).

The Supreme Court also has forbidden distinctions between religious and secular beliefs that hold the same place in adherents' lives. See, e.g., *Welsh v. United States*, 398 U.S. 333 (1970) (serious and sincere moral system must be treated the same as theistic religion for the purpose of conscientious objection); *United States v. Seeger*, 380 U.S. 163, 166 (1965) (same); *Torcaso v. Watkins*, 367 U.S. 488, 495 & n.11 (1961) (secular humanism must be treated the same as religion). We recognize that *Welsh* and *Seeger* were decided under statutes rather than the Constitution (the Court interpreted the conscription statutes to avoid a declaration of unconstitutionality), but *Torcaso* was a constitutional decision. And although both the text and note 11 in *Torcaso* might be characterized as dictum, we held in *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005), that, when making accommodations in prisons, states must treat atheism as favorably as theistic religion. What is true of atheism is equally true of humanism, and as true in daily life as in prison.

The district court stated that none of these decisions matters, because in plaintiffs' own view humanism is not a religion. That misses the point of *Torcaso* and *Kaufman*. Atheists don't call their own stance a religion but are nonetheless entitled to the benefit of the First Amendment's neutrality principle, under which states cannot favor (or disfavor) religion vis-à-vis comparable secular belief systems. Plaintiffs contend that, when a secular moral system is equivalent to religion except for non-belief in God—is, indeed, equivalent to religions such as Shinto and Jainism that do not worship gods—those who embrace that secular system want their

own views to be expressed by celebrants at marriages, the state must treat them the same way it treats religion. A state may accommodate religious views that impose extra burdens on adherents—for example, a state may and sometimes must allow Seventh-day Adventists to get unemployment benefits even though they won't work on Saturday, see *Sherbert v. Verner*, 374 U.S. 398 (1963)—but this does not imply an ability to favor religions over non-theistic groups that have moral stances that are equivalent to theistic ones except for non-belief in God or unwillingness to call themselves religions.

Indiana maintains that humanists are not excluded. Adherents to faiths with clergy can be married in two steps: first they obtain a license, Ind. Code §31-11-4-1, and then they have the marriage solemnized by a priest or equivalent person in the list in §31-11-6-1. (Plaintiffs do not challenge the licensure statute, because religion is irrelevant to that procedure.) Humanists could achieve the same result in three steps: first get a license, then have a humanist celebrant perform a public ceremony appropriate to their beliefs, and finally have a clerk of court or similar functionary solemnize the marriage. That's true enough—but it just restates the discrimination of which plaintiffs complain. Lutherans can solemnize their marriage in public ceremonies conducted by people who share their fundamental beliefs; humanists can't. Humanists' ability to carry out a sham ceremony, with the real business done in a back office, does not address the injury of which plaintiffs complain.

Indiana relies on *Marsh v. Chambers*, 463 U.S. 783 (1983), for the proposition that states may support religious views without extending similar favors to non-religious groups.

*Greece v. Galloway*, 134 S. Ct. 1811 (2014), reiterates *Marsh*'s holding. But neither decision can be divorced from its context. Both concern the long-established practice of opening legislative meetings with prayer. That is to say, they concern what a chosen agent of the government says as part of the government's own operations. Cf. *Garcetti v. Ceballos*, 547 U.S. 410 (2006). They do *not* concern how a state regulates private conduct. Section 31-11-6-1, by contrast, is regulatory. It specifies which private actors are entitled to engage in a particular act in private venues. So although *Marsh* and *Greece* show that a government may, consistent with the First Amendment, open legislative sessions with Christian prayers while not inviting leaders of other religions, they do not begin to suggest that a state could limit the solemnization of weddings to Christians, while excluding Judaism, Islam, Buddhism, and—humanism.

We mention Buddhism in particular because this statute *does* exclude Buddhists, who lack members of the clergy in the sense subsection (1) uses that phrase, and who are not covered in subsections (6) through (10). Counsel for Indiana confirmed this at oral argument, telling us that Buddhists are excluded because their religion does not treat marriage as a sacrament and does not have (in the brief's words) an "organizational commitment to … marriage." Nor, the state adds, does secular humanism treat marriage as holding a special place in its set of values. (Rastafarianism and Jainism, among other religions, apparently would encounter the same obstacle in Indiana.) Counsel for Indiana added that Buddhists (and humanists) are ineligible because they lack "clergy." Baha'i and German Baptists would be ineligible for the same reason, except that they have their own exceptions in §31-11-6-1. All of this supposes that states can define

"clergy," though *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 132 S. Ct. 694 (2012), holds that government must recognize as clergy those persons designated by the faith itself.

At all events Quakers, who lack clergy and do not treat marriage as a sacrament, receive an accommodation in subsection (6), while adherents to Shinto, which has clergy but no immortal god, apparently can perform marriages under subsection (1). Thus Indiana not only discriminates against non-religious ethical groups such as humanists but also discriminates among religions, preferring those with a particular structure (having clergy) and particular beliefs (according a sacred status to marriage).

The statutory list is not limited to religions that have "an organizational commitment to … marriage". At oral argument Indiana's lawyer said that the high priestess of the Church of Satan (along with Wiccans and those who worship Baal) could solemnize marriages under subsection (1), while Buddhists, many other religions, and humanists cannot. This discrimination among ethical codes adds to Indiana's problems under the decisions to which we have referred. See *Larson*, 456 U.S. at 244 ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

These examples, and the state's willingness to recognize marriages performed by hypocrites, show that the statute violates the Equal Protection Clause of the Fourteenth Amendment as well as the First Amendment. It is irrational to allow humanists to solemnize marriages if, and only if, they falsely declare that they are a "religion." It is absurd to give the Church of Satan, whose high priestess avows that

her powers derive from having sex with Satan, and the Universal Life Church, which sells credentials to anyone with a credit card, a preferred position over Buddhists, who emphasize love and peace. A marriage solemnized by a self-declared hypocrite would leave a sour taste in the couple's mouths; like many others, humanists want a ceremony that celebrates *their* values, not the "values" of people who will say or do whatever it takes to jump through some statutory hoop.

*Marsh* and *Greece* observe that the meaning of the Constitution's religion clauses depends in part on historical practices. One cannot understand centuries-old language apart from the culture in which the language was written and originally operated. The history of marriage is that the state came late to the party. For hundreds of years, in the legal tradition that we inherited from England, the persons who could solemnize marriages included clergy, public officials, sea captains, notaries public, and the celebrants themselves. When Indiana codified the list in 1857 (General Laws ch. 44 §3) it left off captains, notaries, and the marrying couple, though it included Quakers and German Baptists. It also left off Islam, Baha'i, and Mormons, which now have their own accommodations in subsections (8) through (10).

The current statute discriminates arbitrarily among religious and ethical beliefs. Plaintiffs say that they would be satisfied if notaries were added to the list; nothing in humanism makes it inappropriate for a leader (or any other member) to be a notary public. Since Indiana has never given a reason for excluding notaries, while including every mayor (subsection (3)) and clerk of court (subsection (5)), that hardly seems an excessive request.

The judgment is reversed, and the case is remanded with instructions to issue an injunction allowing certified secular humanist celebrants to solemnize marriages in Indiana—to do this with legal effect, and without risk of criminal penalties. That is the relief plaintiffs request, and defendants have not made a counterproposal. If Indiana amends its statute to allow notaries to solemnize marriages, the district court should be receptive to a motion to modify the injunction under Fed. R. Civ. P. 60(b)(5) to minimize the extent to which a federal decree supersedes the state's own solution to the problems we have identified.